UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAVID YARDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 22-11395-FDS |
| DAVID KEELER and NESTOR CRUZ, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER ON
# DEFENDANTS' MOTION TO DISMISS

SAYLOR, C.J.

This is an action by an inmate alleging violations of his Eighth and Fourteenth Amendment rights. Plaintiff David Yarde is serving a prison sentence in state custody. He has brought a *pro se* complaint against several prison officials under 42 U.S.C. § 1983, contending that defendants David Keeler and Nestor Cruz violated his constitutional rights by negligently failing to protect him from a gang-related assault and failing to take steps to prevent future attacks.

Both defendants have moved to dismiss the complaint on three separate grounds: (1) failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*; (2) failure to state a plausible claim upon which relief can be granted; and (3) qualified immunity. In addition, defendant Keeler has moved to dismiss under Fed. R. Civ. P. 12(b)(5), contending that plaintiff failed to effect service on him.

For the reasons set forth below, the motion will be granted.

I.      **Background**

The following facts are set forth as alleged in the complaint, unless otherwise noted.

   A.      **Factual Background**

David Yarde is an inmate presently incarcerated at MCI-Concord. (Compl. at 1). At the relevant time, he was incarcerated at the Souza Baranowski Correctional Center. (Defs.' Mot. at 1).

Yarde is serving a prison sentence for the murder of a victim who was a member of the Mission Hill gang. (Compl. at 6). In 2013, he was attacked by other Mission Hill gang members while incarcerated in another facility. (*Id.*).

David Keeler is a correctional officer at Souza Baranowski. (*Id.* at 2). On February 14, 2020, Keeler opened the cell door of an inmate known to be a member of the Mission Hill gang. (*Id.* at 4-6). The gang member attacked Yarde while he was on the telephone. (*Id.* at 6-7). While attempting to defend himself, Yarde was sprayed with mace by an unidentified prison official. (*Id.* at 7). The mace allegedly aided his attacker and impacted his eyesight long-term. (*Id.*).

The complaint alleges that there is a "gang intelligence officer" within the Massachusetts state prison system who documents and collects intelligence on gangs in the system, creating sufficient knowledge that the inmate-attacker posed a danger to Yarde. (*Id.* at 6).

Nestor Cruz is a correctional officer at Souza Baranowski. (*Id.* at 2). There are no factual allegations in the complaint connecting Cruz to the incident.

   B.      **Procedural Background**

On October 7, 2022, plaintiff filed the complaint in this action against four defendants, apparently all prison officials. The complaint asserts a claim under 42 U.S.C. § 1983 for violations of plaintiff's Eighth Amendment and Fourteenth Amendment rights based on

2

defendants' failure to prevent a violent gang attack against him and to take measures to prevent future attacks. It seeks $1,500,000 in monetary damages for pain and suffering stemming from the gang attack and the fear and paranoia plaintiff has experienced following the attack.

On February 10, 2023, the court dismissed the claims against two defendants for failure to state a claim, leaving only defendants Keeler and Cruz.

Defendants Keeler and Cruz have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to exhaust administrative remedies, for failure to state a plausible claim upon which relief can be granted, and on the basis of qualified immunity. Defendant Keeler has also moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) for failure to effect proper service.

## II.      Standard of Review

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Where the court cannot ascertain the nature and basis of any legitimate claims, however, it is under no obligation to rewrite the pleadings on his behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing *pro se* pleadings than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings.").

**III.   Analysis**

    **A.   Motion to Dismiss for Insufficient Service of Process**

Defendant Keeler has moved to dismiss for insufficient service of process. Before a federal court may exercise personal jurisdiction over a defendant, proper service of process must be effected. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Fed. R. Civ. P. 4 sets forth the acceptable methods for service of process. Under Rule 4(e), there are four ways by which to serve an individual defendant within a federal judicial district: (1) by following the requirements of state law for serving a summons in actions brought in the courts of general jurisdiction in the state where the district court is located or where service is made (here, Massachusetts); (2) by delivering a copy of the summons and the complaint to the individual personally; (3) by leaving copies of those items at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (4) by delivering copies to an agent authorized by appointment or by law to receive service of process.

4

Fed. R. Civ. P. 4(e).

When the sufficiency of process is challenged under Rule 12(b)(5), the plaintiff bears "the burden of proving proper service." *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). A return of service "generally serves as *prima facie* evidence that service was validly performed," but a defendant may adduce "rebuttal evidence to refute any presumption of valid service." *Blair v. City of Worcester*, 522 F.3d 105, 111-12 (1st Cir. 2008).

Here, defendant Keeler contends that plaintiff did not serve him with process and that there is no record of his being served. According to Keeler, he is still employed at Souza Baranowski Correctional Center. He also contends that staff at the facility track when correctional employees are served with lawsuits pursuant to their obligations under Massachusetts law. *See* Mass. Gen. Laws ch. 127, § 6 ("All process to be served within the precincts of any penal or reformatory institution shall be directed to and served by the superintendent").

Plaintiff has not filed a return of service as to Keeler. Without a return of service, there is no proof of service; without proof of service, the court cannot exercise personal jurisdiction over Keeler. *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of a service of summons must be satisfied."). Once a party challenges service, the burden shifts to plaintiff to show that service was proper. *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d at 887.

Plaintiff responds that he "provided the U.S. Marshals with the required documents to make service on Lieutenant Keeler, which [he] assumed occurred" and following the rules

"was all that was required of him to assure service of process on the named parties." (Opp. at 5).

Service is completed when a defendant receives the summons and complaint in accordance with Fed. R. Civ. P. 4, not when the Marshals Service receives the papers to be served on a defendant. The plaintiff must provide papers for service to the Marshals Service well before the 90-day service deadline to ensure that service will be completed in a timely matter. Moreover, summonses must be served as to each defendant; therefore, multiple copies of each required document may be necessary for a case with multiple defendants.

In any event, the Court cannot ascertain from the record whether the fault lies with the plaintiff, the Marshals Service, or both. Under the federal rules, service of process must take place within 90 days after the complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows good cause, then "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Under the circumstances, the Court finds that good cause exists to extend the time period for service. As set forth below, the Court will grant plaintiff an opportunity to file an amended complaint against Keeler within 21 days. If he does so within the time permitted, the court will give him 21 additional days to make proper service of that amended complaint. Failure to do so may result in the dismissal of the complaint as to Keeler pursuant to Fed. R. Civ. P. 4 and/or 12(b)(5).

**B.**     **PLRA - Failure to Exhaust Administrative Remedies**

Both defendants have moved to dismiss on the ground that plaintiff failed to exhaust his administrative remedies as required under the PLRA.

The PLRA requires prisoners to exhaust "such administrative remedies as are

6

available" before filing suit under any federal law. 42 U.S.C. § 1997e(a). That limitation "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy the exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Thus, to meet the requirement of proper exhaustion, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). A plaintiff's failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden to raise and prove. *Jones*, 549 U.S. at 216; *see also Cruz Berrios v. Gonzalez-Rosario*, 630 F.3d 7, 11 (1st Cir. 2010).

        1.        **<u>The Massachusetts Inmate Grievance Process Generally</u>**

The Commissioner of the Massachusetts Department of Correction issues regulations for the processing of inmate grievances, which are codified at 103 C.M.R. § 491.00 *et seq*.

Under those regulations, inmates are required to submit a Step 1 informal complaint resolution form to the Informal Complaint Coordinator before filing a grievance. 103 C.M.R. § 491.09(4). Informal complaints must be submitted within five working days of the actual incident or of the inmate's becoming aware of the incident or situation. Mass. Dep't Corr. Informal Compl. Resolution Standard Operating Procs. 7(c).

Upon receipt of an informal complaint decision, an inmate may file a grievance within ten business days. 103 C.M.R. § 491.14(1). The grievance is initially reviewed by the IGC, who must acknowledge receipt of the grievance within one business day and respond within

ten business days.  *Id.* § 491.15(g).  "The absence of a grievance response after six months shall be deemed a denial of the grievance."  *Id.* § 491.14(9).  An inmate may then appeal the decision to the Superintendent within ten business days.  *Id.* § 491.16(1).  The appellate authority shall respond within 30 business days from receipt of the appeal.  *Id.* § 491.16(13).

### 2. Plaintiff's Grievance Filing

Defendants contend that plaintiff failed to appeal the denial of the grievance he filed concerning the February 14, 2020 assault, and therefore that he has not properly exhausted his administrative remedies.  (Defs.' Mot. at 5-6).  Plaintiff responds that he "complied with all administrative process in grieving."  (Opp. at 6).  However, the complaint contains no indication of whether plaintiff filed a grievance, engaged in an appeals process, or otherwise exhausted his administrative remedies.

Defendants submitted several documents in support of their contention that plaintiff failed to exhaust his remedies, including an affidavit of Bethany Hisman, acting Institutional Grievance Coordinator at Souza Baranowski Correctional Center.  (Defs.' Mot. Ex. 1 at 1).  Hisman attests, in part, that (1) plaintiff filed a grievance concerning the February 14, 2020 assault; (2) her office denied that grievance; and (3) plaintiff did not appeal the denial of his grievance.  (*Id.* at 2-3).  Defendants also submitted plaintiff's grievance forms.  (Defs.' Mot. Ex. 2).  Thus, according to defendants, plaintiff failed to properly exhaust his claims.

However, defendants have not shown that the PLRA exhaustion issue may be properly decided at this juncture.  As noted, PLRA exhaustion is an affirmative defense as to which defendants bear the burden of proof.  A motion to dismiss may therefore be granted on the ground of failure to exhaust "only where 'the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.'"  *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 67 (D. Mass 2015) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)); *see, e.g.*, *White v.*

8

*Spaulding*, 2020 WL 1974333, at *5 (D. Mass. Apr. 24, 2020); *Riley v. Antonelli*, 2020 WL 129057, at *2 (D.R.I. Jan. 10, 2020).

Here, defendants rely on extrinsic evidence in order to establish that plaintiff failed to exhaust the appeals process at Souza Baranowski Correctional Center. Thus, "the matter cannot be determined from a review of the four corners of the complaint." *See Dantone v. Bhaddi*, 570 F. Supp. 2d 167, 173 (D. Mass. 2008). If defendants are correct, the matter may be resolved by summary judgment, but not on a motion to dismiss.[1] Here, at least, the Court will decline to infer failure to exhaust from the four corners of the *pro se* complaint. Defendants' motion to dismiss for failure to exhaust administrative remedies will therefore be denied without prejudice as to the renewal of that argument in response to an amended complaint or on summary judgment.

### C.     Whether the Complaint States a Plausible Claim

Defendants further contend that the complaint should be dismissed because it fails to state a plausible claim upon which relief can be granted.

#### 1.     Allegations Against Defendant Cruz

The complaint names Captain Nestor Cruz as a defendant, but alleges no facts about him whatsoever. It thus does not contain any factual allegations identifying his alleged misconduct, nor can it be reasonably inferred from the allegations that he was directly involved in the violation of plaintiff's rights. *See Riva v. Brasseur*, 2016 WL 9650983, at *1 (1st Cir. Sept. 12,

---

[1] In any case, the documents may still not prove failure to exhaust. That was the issue in *Ross v. Blake*, 578 U.S. 632 (2016), where the Supreme Court identified three conditions "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief," and is therefore "unavailable." *Id.* at 643. Those conditions include (1) when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. In such cases, the failure to exhaust an administrative remedy will not bar the plaintiff from filing suit.

2016) (affirming dismissal of complaint alleging no facts on a particular claim). The complaint therefore fails to state a plausible claim as to defendant Cruz and will be dismissed as to him.

### 2. Allegations Against Defendant Keeler

Even if plaintiff could establish proper service on Keeler, the complaint nevertheless fails to state a plausible claim against him.

Under the Eighth Amendment, "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "However, not every injury suffered by a prisoner at the hands of a fellow inmate gives rise to an Eighth Amendment claim." *Giroux v. Somerset County*, 178 F.3d 28, 32 (1st Cir. 1999). In order to state a claim for the violation of Eighth Amendment rights, two requirements must be met. *Id.* First, "'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). Second, "the official involved must have had 'a sufficiently culpable state of mind,' described as 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991); *Farmer*, 511 U.S. at 834). The state of mind required is "more blameworthy than negligence." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).

The complaint does not satisfy that standard. The sole allegation in the complaint as to Keeler is that he "deliberately opened the cell door of an inmate [he] knew [was] a gang [] member . . . ." (Compl. at 4-6). The complaint further states there is a "gang intelligence officer" in the Massachusetts state prison system who documents and collects intelligence about the gangs, and thus there is "no way" that the Massachusetts Department of Corrections was not aware of the threat posed to plaintiff by a documented Mission Hill gang member—the same gang as his alleged victim. (*Id.* at 6).

10

However, the complaint states no facts sufficient to conclude that Keeler himself possessed a sufficiently culpable state of mind or that he was aware of facts that could lead him to infer that there was a substantial risk of serious harm to plaintiff. *See Burrell*, 307 F.3d at 8 (citing *Farmer*, 511 U.S. at 844). Similarly, it does not plead sufficient facts from which a factfinder could reasonably conclude that Keeler knew of the risk from the fact that it was so obvious. *See id.* at 8. For example, it alleges no facts that Keeler was aware of plaintiff's own gang affiliation. Accordingly, the complaint in its present form fails to state a plausible claim under the Eighth Amendment against defendant Keeler.

However, in his opposition to the motion to dismiss, plaintiff alleges new facts, including that (1) the prison operated under a policy of segregating certain groups from each other due to known conflicts between the two—"gr[a]ys" and "greens"; (2) the normal procedure when members of these segregated groups might come into contact was to "lock-in all prisoners technically from the gr[a]y side until the so-called green side prisoner[s] [were] safely out of the unit. No one mixed from either side due to known conflicts"; (3) plaintiff belonged to the "green side" of the prison; (4) plaintiff's attacker belonged to the "gr[a]y" side; (5) defendant Keeler opened the cell door of the "gr[a]y" prisoner who attacked plaintiff during a recreation period for the "green prisoners"; and (6) did so knowingly in violation of the policy of separation of prisoners of known, rival gangs. (ECF No. 27 at 2-5).

If those allegations are true, it may be a reasonable inference that Keeler was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [] also dr[e]w the inference." *Farmer*, 511 U.S. at 837. For example, those further allegations could suggest that Keeler was aware of the prison's policy against commingling rival gang members, and that he knew or should have known the potential for harm when he allowed a

11

prisoner from one side of the block to enter the recreation area at a time when the other side was present. *See King v. Dep't of Correction*, 2016 WL 7175592, at *5 (D. Mass. 2016) (finding plaintiff sufficiently alleged Eight Amendment violation for failing to protect from rival gang members at Souza Baranowski Correctional Center).

Furthermore, it seems plausible that qualified immunity would not apply to those circumstances.[2] *See King*, 2016 WL 7175592, at *7 (finding qualified immunity did not apply when plaintiff alerted guards that his cell assignment was problematic and was beaten after a relocation near rival gang members); *Facey v. Dickhaut*, 892 F. Supp. 2d 347, 357-59 (D. Mass. 2012) (holding that qualified immunity did not apply when plaintiff was placed in a housing unit with members of a rival gang and attacked); *Thomas v. Rhode Island*, 2020 WL 1703163 (D.R.I. 2020) (finding plaintiff sufficiently pleaded an Eighth Amendment violation by asserting he was identified as a gang member and was let into the recreation area with rival gang members who assaulted him); *see also Robinson v. Prunty*, 249 F.3d 862, 867 (9th Cir. 2001) (holding the district court did not err in denying qualified immunity when members of rival gangs permitted in the exercise yard at the same time attacked).

However, the Court may not consider such facts, which are outside the pleadings, on a motion to dismiss—if they are to be considered, they must be raised in an amended complaint. *See Willitts v. Life Ins. Co. of N. Am.*, 2021 WL 735784, at *4 (D. Mass. Feb. 25, 2021) ("[A]n opposition to a motion to dismiss is not the place for new factual allegations. . . . This is generally true even if the plaintiff is proceeding *pro se*.") (collecting cases). The new allegations

---

[2] Qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, the court must determine (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Maldonado v. Fontanes*, 568 F.3d 263, 268-69 (1st Cir. 2009).

cannot be considered unless they are re-alleged in an amended complaint.  The pleading properly before the Court, therefore, fails to establish a plausible claim in its current form.

Nonetheless, because of the foregoing analysis and because plaintiff is proceeding *pro se*, the Court will provide him an opportunity to file an amended complaint that cures the deficiencies identified in this memorandum.  Any such amended complaint shall be filed within 21 days (that is, by February 20, 2024).

## IV.   Conclusion

For the foregoing reasons,

1. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART without prejudice.

2. If plaintiff wishes to file an amended complaint, he must do so within 21 days (that is, by February 20, 2024).

3. If plaintiff files an amended complaint, he must serve it within 21 days thereafter.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  January 30, 2024                    Chief Judge, United States District Court